## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ANTHONY M. ZUPA,

                Plaintiff,

v.

GENERAL ELECTRIC COMPANY,

                Defendant.

3:16-cv-00217 (CSH)

## RULING ON MOTION TO DISMISS
## AND CROSS-MOTIONS PERTAINING TO DISCOVERY

HAIGHT, Senior District Judge:

Plaintiff Anthony Zupa brings this action, principally under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), against his former employer, Defendant General Electric Company ("GE"). Through this action, Plaintiff seeks to receive benefits under GE's Supplemental Pension Plan ("SPP") to which he alleges he is entitled. Pending before the Court is Defendant's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as well cross-motions pertaining to discovery. This Ruling resolves those motions.

## I.      Background

Plaintiff commenced employment with Defendant on April 14, 1997. Amended Complaint ("AC") ¶ 3. In 2007, he was promoted to a position in the "executive band," which potentially made him eligible for Defendant's SPP. AC ¶¶ 3-4. The SPP is a "supplemental" plan because it provides pension benefits to company executives in addition to those offered to what Plaintiff refers to as "regular employees."[1] AC ¶ 4. Plaintiff alleges that, in the event of the elimination of a particular

---

[1] The plan is what is known as a "top hat" plan. "Top hat plans are designed to provide certain employees with payments over and above the benefits provided by 'qualified' employee

employment position, executive plan employees are entitled to benefits under the SPP if the following three conditions are met: (i) the employee "had a minimum of five (5) years of pension quality years"; (ii) the employee served "three (3) years as an executive in a role that is being eliminated"; and (iii) "the executive was within fifteen (15) years of retirement age (60)." AC ¶ 4.

In 2014, Plaintiff's position was eliminated by GE for reasons unrelated to Plaintiff's job performance. AC ¶¶ 6-8. At that point, Plaintiff "had accrued seventeen (17) years of pension quality years with the Defendant; seven (7) years as an executive in the role that was being eliminated; and was within fifteen (15) years of retirement at age 60." AC ¶ 9. Plaintiff thereby alleges that as of his termination, he was entitled to benefits under the SPP. AC ¶ 10. However, Plaintiff was allegedly "advised that the Defendant was not providing the Plaintiff with the supplemental pension." AC ¶ 11. In response, Plaintiff "filed an appeal of the denial to provide a supplemental pension with the Defendant's Pension Center, case number CNF 509636 and case number CNF 5096720," which Defendant "failed or refused to process." AC ¶¶ 12-13. Plaintiff also alleges that Defendant refused to provide Plaintiff with information regarding the pension plan and benefits package, despite Plaintiff's requests therefor. AC ¶ 14.

On January 13, 2016, in light of the above allegations, Plaintiff brought a one-count complaint against Defendant in Connecticut Superior Court. Doc.1-2. Defendant removed the action to this Court on February 9, 2016, on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331. Doc. 1. Defendant argued that the federal question arises from its argument that Plaintiff's

---

benefit plans—*i.e.*, plans that are eligible for favorable tax treatment. . . . Top hat plans are exempt from many provisions of ERISA, including the participation and besting, funding, and fiduciary responsibility requirements, . . . but like qualified plans, they are subject to disclosure requirements, to civil enforcement, and to the duty to have a claims procedure." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 217 (2d Cir. 2006).

claim is barred pursuant to ERISA.  Doc. 1 ¶¶ 8-19.  On March 14, 2016, Plaintiff filed the Amended Complaint, the operative pleading in this case, proffering two cause of action: (i) violation of ERISA; and (ii) breach of contract.  On March 31, 2016, Defendant moved to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6).  On June 14, 2016, after the motion to dismiss was fully briefed, Plaintiff filed a motion to compel discovery.  In response, Defendant filed a cross-motion for a protective order against any discovery.  On July 8, 2016, the Court heard oral argument on the pending motions and reserved judgment thereon.

## II.    Motion to Dismiss

### A.    Count One (ERISA)

Defendant moved to dismiss Count I of the Amended Complaint on two grounds: (i) failure to exhaust administrative remedies; and (ii) Plaintiff is not entitled to benefits under the SPP.  For reasons to be made clear, the Court begins with the exhaustion argument.

The Second Circuit has "consistently recognized 'the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'"  *Diamond v. Local 807 Labor Mgmt. Pens. Fund*, 595 F. App'x 22, 24 (2d Cir. 2014) (quoting *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F. 2d 588, 594 (2d Cir. 1993)).  In *Kennedy*, the Second Circuit explained the rationale for the exhaustion requirement:

> The primary purposes of the exhaustion requirement are to: (1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; (2) provide a sufficiently clear record of administrative action if litigation should ensue; and (3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not *de novo*.

989 F. 2d at 594.

Plaintiff does not dispute Defendant's assertion that he did not exhaust the administrative

procedure called for by the SPP.  Rather, Plaintiff argues instead that he is excepted from ERISA's exhaustion requirement.  During the course of his briefing, Plaintiff has ultimately suggested two separate exceptions that obviated his need to exhaust his administrative remedies.  *First*, he argues that exhaustion was made futile pursuant to Defendant's failure to process his alleged "appeals."  *Second*, he argues that he should be "deemed to have exhausted his administrative remedies" pursuant to 29 C.F.R. § 2560.503-1(l).  The Court considers these arguments in turn.

### 1.      Futility Exception

In *Kennedy*, the Second Circuit explained that an ERISA claimant may be excused from exhaustion where the administrative process would be "futile."  However, that futility exception is not applied lightly.   "[F]utility . . . excuse[s] an ERISA plaintiff's failure to exhaust only '[w]here claimants make a *clear and positive showing* that pursuing available administrative remedies would be futile.'" *Davenport v. Harry N. Abrams, Inc.*, 249 F.3d 130, 133 (2d Cir. 2001) (quoting *Kennedy*, 989 F.2d at 594); *see also MacLennan v. Providen Life & Accident Ins. Co.*, 676 F. Supp.2d 57, 66 (D. Conn. Dec. 15, 2009) (a "'plaintiff invoking this [futility] doctrine has a heavy burden'" (quoting *Cole v. Travelers Ins. Co.*, 208 F. Supp.2d 248, 262 (D. Conn. 2002)).  *Davenport* held that such a "clear and positive showing" requires an "unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review of the decision would be futile." *Id.*

Plaintiff attempts to satisfy this futility standard with reference to his allegation that he filed an appeal with the Defendant's Pension Center and that Defendant "failed or refused to process this appeal."  Defendant responds by asserting that Plaintiff's references to an "appeal" are a red herring because Plaintiff acknowledges that he never actually instituted the process envisioned by the plan

itself.  Specifically, the SPP handbook states that

> If you dispute the response to your request for benefits under the GE
> Supplementary Pension Plan, you must submit the disputed claim for
> benefits to the Secretary of the GE Pension Board at 3135 Easton
> Turnpike, Fairfield CT 06828.

Doc. 19-4, at 6.[2]  Reference to the plan document when assessing a claimant's exhaustive efforts is
necessary.  This is because "'exhaustion in the context of ERISA requires only those administrative
appeals *provided for in the relevant plan or policy*.'"  *Thomas v. Verizon*, 2005 WL 3116752, at *1
(2d Cir. Nov. 22, 2005) (quoting *Kennedy*, 989 F.2d at 594) (emphasis added).  Accordingly,
"[u]nder Second Circuit case law, courts look to whether plaintiffs have utilized and exhausted
administrative remedies provided for *under the plan* at issue, rather than pursuant to plaintiff's
understanding of what may constitute the best method of addressing his claims."  *Egan v. Marsh &
McLennan Cos., Inc.*, 2008 WL 245511, at *10 (S.D.N.Y. Jan. 30, 2008) (emphasis in original).

With these principles in mind, Plaintiff's argument relying on his self-defined "appeals" rings
hollow.  Plaintiff can make no "clear and positive showing" that exhaustion would be futile when
he acknowledges that he did not follow any of the basic steps outlined in the SPP to institute the
actual claims process.  In other words, Plaintiff has no means to predict how Defendant will act
within its claims procedure because Plaintiff has done nothing to initiate that procedure.

Plaintiff's argument is most clearly precluded by the Second Circuit's decision in *Davenport*.
There, the plaintiff—an independent contractor—brought an ERISA claim in federal court against
the company that hired him without first (or ever) filing an application for benefits pursuant to that

---

[2]  The Court "may consider this document [at the motion to dismiss stage] because the
pleading relies heavily upon its terms and effect, which renders the document integral to the
complaint."  *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 61 (2d Cir. 2016) (internal
quotations omitted).

company's pension plan.  Rather, the plaintiff wrote letters to the company asserting her right to benefits.  The company responded in a letter of its own stating its view that the independent contractor was not covered by the plan at issue.  The plaintiff then argued in court that exhaustion of administrative remedies would be futile because the company's letter definitively stated its position that she was not entitled to benefits.  The Second Circuit held this to be insufficient to establish futility because the "putative 'denial' of benefits contained in [the employer's] letter to [plaintiff] did not render futile further pursuit of her claims *through the proper channels*." *Davenport*, 249 F.3d at 134 (emphasis added).

*Davenport* therefore clearly forecloses this aspect of Plaintiff's futility argument.  Plaintiff does not dispute that the "appeal" he filed was not through any of the formal procedures identified in the SPP.  Accordingly, Plaintiff cannot yet establish, as a matter of law, that going through the SPP claims process would be futile.  In fact, in *Davenport*, the claim of futility was stronger than Plaintiff's.  There, as discussed, the defendant-company sent a formal letter indicating its substantive position that the plaintiff was not entitled to benefits under the plan at issue.  Nevertheless, the Second Circuit still required that the plaintiff go through the administrative claims procedure.  Here, Plaintiff only alleges that the Defendant responded to his putative "appeal" with silence.[3]  In light of *Davenport*, such an allegation is far from sufficient to make a claim that exhaustion of administrative remedies would be futile.

The only other allegation Plaintiff points at to demonstrate alleged futility is that:

---

[3] In fact, it appears that Defendant only affirmatively stated its position as to the Plaintiff's entitlement to benefits within the context of this litigation.

> [Plaintiff] requested the Defendant to provide information including
> a complete copy of the pension and benefits package in effect during
> [Plaintiff's] employment with the Defendant, and the Defendant has
> failed or refused to provide said information or any information on
> the executive band supplemental pension.

Plaintiff then argues that "Defendant's failure to . . . provide [such] information on the plan has made [his] effort [to pursue an  administrative remedy] futile." Doc. 21, at 10.  This argument is also foreclosed by *Davenport*, in which the Second Circuit upheld dismissal of plaintiff's case despite the fact that the plaintiff—as an independent contractor rather than an employee—had no access to the plan documents containing the claims procedure:

> 'Even if plaintiff was unaware of her remedies under the plan prior to
> the institution of this action, she became aware of them now [through
> the litigation] and yet inexcusably has failed to avail herself of them.
> A dismissal for failure to exhaust would promote the purposes of
> [ERISA] by enabling the plan committee to perform the function that
> Congress contemplated that it would perform.'

*Davenport*, 249 F.3d at 134 (quoting district court decision).  Plaintiff's argument that exhaustion is futile because he lacked access to the plan documents at the time he filed his Complaint is therefore meritless.  As in *Davenport*, Plaintiff has received the plan documents during the litigation, yet he has "never attempted to file a claim for benefits." *Id.*  This is despite the fact that Plaintiff's counsel acknowledged at oral argument that had Plaintiff been aware of the terms of the SPP, he would be pursuing his administrative remedies.  *See* Doc. 42, at 41 ("if in the first place they provided the plan, we would have been back at the plan administrator pursuing this").  This acknowledgment demonstrates precisely the manner in which Plaintiff's futility argument lacks merit.  Moreover, Defendant's counsel represented to the Court during the hearing that Defendant eagerly awaits, nay unrestrainedly invites, Plaintiff's invocation of Defendant's defined administrative procedures.  Doc. 42, at 9 ("We've invited the plaintiff to exhaust.  We asked him.  We've told him

-7-

the procedures and given him the opportunity to send his claim to the pension board as set forth in the plan documents.  He has refused."); *see also* Doc. 43, at 9 n.3 ("Defendant has invited Plaintiff to submit his claim pursuant to the procedure outlined in the Plan").  Plaintiff-counsel's statement demonstrates that the only obstacle Plaintiff actually saw to his exhaustion of remedies was lack of access to the plan documents and procedures.  That lack of access has been removed.  In these circumstances, exhaustion cannot be disregarded as futile.

In light of the above, Plaintiff falls far short from stating a plausible claim that he may meet his heavy burden of demonstrating that exhausting his administrative remedies would be futile.

**2.      29 C.F.R. § 2560.503-1(l)**

Plaintiff next argued that he should be "deemed to have exhausted" his administrative remedies pursuant to 29 C.F.R. § 2560.503-1(l).  Section 2560.503-1(l) provides as follows:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.[4]

Plaintiff raised this argument—that he should be deemed to have exhausted his administrative remedies because Defendant "fail[ed] to establish or follow claims procedures

---

[4] This "'deemed exhausted' provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court." *Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 222 (2d Cir. 2006).  Further, although § 2560.503-1(l) refers to "claimant[s]," a plaintiff need not have filed a claim for benefits to invoke the section. *Id.* at 223 n.9 (rejecting the argument that § 2560.503-1(l) "does not apply to [Plaintiff] because he did not file a claim, and hence, was not a 'claimant' within the meaning of that provision," because § "2560.503-1(a) defines 'claimant' to mean plan participants and beneficiaries—a group that undoubtedly includes [Plaintiff]").

consistent with the requirements of [§ 2560.501]"—for the first time in an unauthorized "Sir Reply" [*sic*] to Defendant's motion to dismiss. Doc. 23, at 4-5. The Court ultimately authorized that filing because Defendant's reply brief attached a new document and the "justice of the cause require[d] that Plaintiff have an opportunity to respond to such." Doc. 26. However, the brief invocation of 29 C.F.R. § 2560.503-1(l) in Plaintiff's sur-reply cannot be construed as a response to the new document attached to Plaintiff's reply brief. In fact, it goes far beyond that. As explained below, the document attached to Defendant's reply brief was identical in all relevant respects to that filed along with the opening motion to dismiss and, significantly, Plaintiff raised arguments as to its substance at that time. His invocation of 29 C.F.R. § 2560.503(1)(l) therefore contravenes the Court's earlier order, as well as the rules regarding sur-replies, and must be discarded at present.

The additional document attached in reply was the SPP that was effective as of January 1, 2005 (the "2005 Plan"). Doc. 22-1 Ex. C. Defendant had attached the SPP effective July 1, 2011 (the "2011 Plan") to its opening brief, [Doc. 19-3], which Defendant asserts is the SPP that governs Plaintiff's benefits. Defendant only attached the 2005 Plan to its reply brief because, in opposition, Plaintiff argued (in essence) that the 2005 Plan, rather than the 2011 Plan, governed his claim. In reply, Defendant stated that Plaintiff was wrong, and that the 2011 Plan governs Plaintiff's separation from the company.[5] Defendant nevertheless attached the earlier version only to demonstrate that "[t]he relevant terms of the 2005 Plan are underlined identical to the 2011 Plan," and that Plaintiff's argument thereby fails no matter which version applied. Doc. 28, at 1.

---

[5] Defendant is undoubtedly correct that the 2011 Plan, by its very terms, forecloses Plaintiff's argument that the 2005 Plan applied to him. The 2011 Plan states that "[t]he rights under this Plan of an Employee who leaves the Service of the Company at any time . . . shall be governed by the provisions of the Plan in effect on the date such Employee leaves the service of the Company." Doc. 19-3 § XIV(e).

Despite his objection that the 2011 Plan was inapplicable, Plaintiff took efforts to make arguments directed at the substance of the 2011 Plan in his opposition brief.  Specifically, Plaintiff argued that "[t]he benefits plan disclosed [in the 2011 Plan and handbook] indicate that the GE Supplementary Pension Program is an unfunded 'excess benefits' plan, and is not governed by ERISA."  Doc. 21, at 12.  However, Plaintiff made no reference to 29 C.F.R. § 2560.503-1(l), nor did he otherwise generally argue that he should be deemed to have exhausted his administrative remedies in light of any deficiency in the 2011 Plan.  This is notable because, in that opposition brief, Plaintiff went through a significant effort to identify six separate exceptions to the exhaustion doctrine, but never identified 29 C.F.R. § 2560.503-1(l).[6]  Further, a number of those exceptions that Plaintiff did identify are not even remotely applicable as to the present facts.  Plaintiff therefore can offer no excuse as to why he did not timely raise his § 2560.503-1(l) argument.

Where leave is granted to file a sur-reply to address new issues raised in a reply brief, the Court should only accept arguments that "address[es] those new issues."  *Travelers Indem. Co. v. Excalibur Reinsurance Corp.*, 2013 WL 4012795, at *3 (D. Conn. Aug. 5, 2013); *see also Ferrie v. DirecTV, LLC*, 2016 WL 183474, at *1 n.1 (D. Conn. Jan. 12, 2016) ("the Court's consideration of the Sur-Reply should be limited to those portions that address the new evidence"); *Raffone v. Weihe*, 2016 WL 2642213, at *1 n.1 (D. Conn. May 9, 2016) (new arguments raised in a sur-reply are "procedurally improper").  Accordingly, Plaintiff's delayed invocation of his § 2560.503(1)(l)

---

[6]  Plaintiff would err to the extent he would respond by stating that he only identified examples of exhaustion in which the futility doctrine was invoked, *see* Doc. 21, at 8.  For example, Plaintiff's first citation is to *Novak v. TRW, Inc.*, 822 F. Supp. 963, 969 (E.D.N.Y. 1993), which, as Plaintiff acknowledges, was addressing an exhaustion exception entirely separate from futility: "some courts have held that exhaustion of administrative remedies is not a prerequisite for maintaining a claim under § 510 of ERISA."  Accordingly, Plaintiff has no basis as to why he failed to raise this exception in his opposition brief.

argument is not properly before the Court.  This is starkly apparent in the case at bar, in which Defendant only learned of this argument through an initially unauthorized sur-reply.  Accordingly, on the present record, the Court declines to consider Plaintiff's argument as to § 2560.503-1(l).

In light of the foregoing, Count One of Plaintiff's complaint will be dismissed without prejudice in light of Plaintiff's failure to exhaust his administrative remedies.

### B.    Count Two (Breach of Contract)

Having dismissed Plaintiff's ERISA claim—the only basis by which this Court's original jurisdiction was invoked—Plaintiff's state law contract claim is all that remains.  The Court's power to adjudicate that claim arises from its power of supplemental jurisdiction, granted to it by 28 U.S.C. § 1367(a).  However, § 1367(c)(3) provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  Such is the case at bar.  Pursuant to that section, the Court declines, at present, to exercise supplemental jurisdiction over Plaintiff's state law contract claim.  However, such dismissal is without prejudice to Plaintiff re-asserting that cause of action in the appropriate forum and at the appropriate juncture.

### III.    Discovery Motions

Due to the Court's ruling dismissing this action, the Court denies as moot Plaintiff's motion to compel and Defendant's motion for a protective order.

### IV.    Conclusion

In light of the foregoing, the Court GRANTS Defendant's [Doc. 19] motion to dismiss in view of the fact that Plaintiff has failed to exhaust his administrative remedies and thereby DISMISSES WITHOUT PREJUDICE both Counts of Plaintiff's Amended Complaint.  Plaintiff's

[Doc. 29] Motion to Compel and Defendant's [Doc. 36] Cross-Motion for a Protective Order are

DENIED AS MOOT.

**It is SO ORDERED.**

**Dated: New Haven, Connecticut**
          **July 22, 2016**

                                                     _/s/ Charles S. Haight, Jr._
                                                     **Charles S. Haight, Jr.**
                                                     **Senior United States District Judge**